# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT
## OF NORTH CAROLINA

| | |
|---|---|
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | CASE NO. 1:25-CV-1192 |
| **and** | **JURY TRIAL DEMANDED** |
| **ABC IP, LLC, a Delaware limited liability company,** | |
| **Plaintiffs.** | **AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| **v.** | |
| **AS DESIGNS, LLC, a North Carolina limited liability company,** | |
| **and** | |
| **Matthew S. Karlovic, an individual,** | |
| **and** | |
| **Calvin Olson, an individual,** | |
| **and** | |
| **John Doe, an individual using the alias "s3igu2" and/or "Seagoo Threetwo"** | |
| **Defendants.** | |

This is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse AS Designs LLC, also known as Active Safety Designs ("AS Designs"), Matthew Karlovic ("Karlovic"), and Calvin Olson ("Olson"), John Doe, an individual using the alias "s3igu2" and/or "Seagoo Threetwo" ("Seagoo") (collectively "Defendants") of infringing U.S. Patent No. 12,038,247 ("the '247

1 - COMPLAINT

Patent") and U.S. Patent No.12,031,784 ("the '784 Patent") (together, "the Asserted Patents") as follows:

## PARTIES

1.     ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.     Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306.

3.     Upon information and belief, AS Designs, also known as Active Safety Designs, is a company existing under the laws of the state of North Carolina, with a business address of 3000 Rivercross Drive, High Point, North Carolina 27265-8025.

4.     Upon information and belief, Matthew Karlovic is an individual residing in High Point, North Carolina, and is an owner and managing member of AS Designs, which he operates from his residence.

5.     Upon information and belief, Calvin Olson is an individual residing in Greensboro, North Carolina, and is an owner and member of AS Designs.

6.     Upon information and belief, Seagoo is an individual committing acts of infringement in Greensboro, North Carolina, and is providing CAD files to AS Designs

## JURISDICTION AND VENUE

7.     This is an action for patent infringement arising under 35 U.S.C. §§ 271, 281, and 284-85.

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action

arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

9.     Personal jurisdiction and venue over Defendants is proper in this District because the Defendants reside in and/or have a place of business in this District.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this District and/or have a regular and established place of business in this District.

## **BACKGROUND**

11.    This lawsuit asserts direct, contributory and induced infringement of the '247 Patent. A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

12.    The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

13.    This lawsuit asserts direct, contributory and induced infringement of U.S. Patent No. 12,031,784 ("the '784 Patent"). A true and correct copy of the '784 Patent is attached hereto as Exhibit B.

14.    The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. The application from which the '784 Patent issued claimed a priority date of November 5, 2021.

15.    ABC is the current assignee and owner of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

16.    Rare Breed is the exclusive licensee of the Asserted Patents.

17.     Upon information and belief, Defendants have committed acts of direct, contributory and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.     On August 9, 2025, a cease and desist demand letter was delivered to AS Designs and Karlovic, informing them of the '247 Patent and expressly accusing its "Super Safety," "ARC-FIRE Trigger – AMBI KIT," and other similar products sold via the website at www.activesafetydesigns.com of patent infringement.

19.     Defendants ignored this demand and continued to make, use, sell, offer for sale, and/or import the accused products.

### The Inventions

20.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being actuated (pulled) by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier toward the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector, and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (that is, fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

COMPLAINT - 4 -

21.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

22.     In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to actuate (pull) the trigger again, without the need for a disconnector.

23.     The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has at least two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state, and the forced reset mode of the trigger uses a cam to reset the trigger member while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also prevents movement of the trigger member during a part of the cycle. That is, the cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

24.     The '784 Patent relates to an extended trigger member locking device having a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger

member. The locking member is configured to be movably supported by a frame and includes a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier. The locking member has a body portion that is movably supported and an upward extension portion that is separately movable relative to the body portion between an extended position and a deflected position.

<b><u>The Infringing Devices</u></b>

25.     On information and belief, Defendants have and are currently making, using, selling, and/or offering for sale at least a "Super Safety" and "ARC-Fire" trigger kits, which when assembled as instructed, embody the technology claimed in the '247 Patent (the "Infringing Devices").

26.     On information and belief, Defendants sell or offer for sale the Infringing Devices via the AS Designs website (https://www.activesafetydesigns.com/). These include the ARC-Fire Trigger-AMBI Kit and Super Safety Kit, of which exemplary photographs are shown below:





27.     The Super Safety kit is a specially made cam and cam and lever that replaces a standard AR-pattern safety selector, along with a trigger member specially modified to work with the cam.

28.     Defendants make, use, sell, offer for sale, and/or import Defendants also separately sell or are offering to sell a "Centering Block for SS," "Rounded Detent for SS," "Precut Trigger for SS," "SS Cam + Lever," "SS Cam," and "SS Lever", which are specially designed parts solely for use with a "Super Safety," as shown below. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent.





29.     As shown, for example, at https://activesafetydesigns.com/ar15/geissele-sd-3g-precut-trigger and illustrated below, Defendants sell or offer for sale multiple versions of trigger components which include the trigger, disconnector, hammer, and springs that are specially modified for combination with the Super Safety and ARC-FIRE products. When combined, these make up the entire claimed invention. This allows the customer to select their preferred combination of components to make the complete patented invention.



30.    As shown, for example at https://activesafetydesigns.com/mp5/mp5-slip-trip-v5/ and illustrated below, Defendants make, use, sell and/or offer for sale slip trip kits and lower housings so that the Super Safety and ARC-Fire may also be used in MCX or MPX pattern firearms, "To use the super safety or ARC-Fire in the MP5 (SP5, AP5, etc.), you will need a new lower that uses AR FCG parts and the MP5 Slip Trip. You can get the lowers from AS Designs, Polymer Pew, or any Leber V2 spec lower. The super safety or ARC-Fire does NOT work with the stock MP5 lowers."



31.     On AS Designs' website (https://activesafetydesigns.com/mp5/mp5-slip-trip-v5/)

it states: "*The MP5 Slip Trip V5 was created by s3igu2 and his approval was given for our*

*product. Please visit his Twitter for updates, other designs, and to support his*

*work:* https://x.com/s3igu2."

32.     Defendants offer a Lower for MP5-platform specially designed for use with the

Super Safety and ARC-Fire devices. They describe them: "We are now offering the AR

MP5/G3/91 Lower fully machined and ready for super safe and ARC-Fire action!"

https://activesafetydesigns.com/g3-91/super-safety-g3-91-mp5-machined-lower-9c-9ct-9rs-91-

a3s-51-full-kit/



33.     Whoever offers to sell or sells within the United States or imports into the United

States a component of a patented machine, manufacture, combination or composition, or a

material or apparatus for use in practicing a patented process, constituting a material part of the

invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable for

substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

34.     These parts sold by Defendants are components of a patented apparatus,

constituting a material part of the invention. Defendants know that these are especially made or

especially adapted for use in an infringement of the '247 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

35.     Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

36.     Defendants instruct purchasers to assemble the Infringing Devices in a way that induces infringement the '247 Patent. Instructions and videos for installation and use, and troubleshooting:  https://activesafetydesigns.com/ar-platform-troubleshooting/ and https://activesafetydesigns.com/mp5-troubleshooting/ and https://activesafetydesigns.com/videos/)



37.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes.

38.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

39. In view of the Defendants' continued infringement after ABC's demand letter, the infringement is knowing and willful.

40. Upon information and belief, Karlovic directed and directs the operations of AS Designs, actively and knowingly aided, assisted, and abetted AS Design's infringement, including the decision to make, use, sell offer for sale, and/or import, or to continue to make, use, sell offer for sale, and/or import, the Infringing Devices.

41. Upon information and belief, Olson directed and directs the operations of AS Designs, actively and knowingly aided, assisted, and abetted AS Design's infringement, including the decision to make, use, sell offer for sale, and/or import, or to continue to make, use, sell offer for sale, and/or import, the Infringing Devices.

## COUNT I – "SUPER SAFETY" INDIRECT INFRINGEMENT OF THE '247 PATENT

42. The allegations set forth in paragraphs 1-41 are fully incorporated into this First Count for Relief.

43. Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the Super Safety kits.

44. An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended and instructed is illustrated in the chart below:

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that forces the reset of the trigger and locks the trigger during the cycle of operation. |

COMPLAINT - 12 -

| | |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector.  |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. <br><br>(Hammer Set Position)<br><br>(Hammer Released Position)] |

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**(Trigger Member Set Position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear out of engagement in the released position. |

Case 1:25-cv-01192-WO-JEP     Document 4     Filed 12/30/25     Page 14 of 50

| | |
|---|---|
| |  **(Trigger Member Released Position)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer. **(Disconnector Hook Engaged)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. The cam has a cam lobe. (Image in fire control mechanism pocket above shown in yellow) |



**(Super Safety Cam with Lobe and Lever)**

| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position)**<br><br>In the second position, the cam lobe forces the trigger member toward the set position when it is in the forced reset semi-automatic mode.<br><br>**(Cam and Lobe Second Position)** |
| --- | --- |

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.<br><br> |
| said cam is in said first position, |  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook.<br><br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

COMPLAINT - 17 -



| | |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |



| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook is prevented from catching the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

| | |
|---|---|
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member to fire the firearm.  |

45.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

46.     Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively contribute to and actively induce infringement of the '247 Patent.

47.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

48.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

49.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

50. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – "ARC-FIRE" INDIRECT INFRINGEMENT OF THE '247 PATENT

51. The allegations set forth in paragraphs 1-50 are fully incorporated into this Second Count for Relief.

52. Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the ARC-Fire trigger kits.

53. An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended and instructed is illustrated in the chart below:

| Claim Language | Infringing Device (ARC-Fire) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation. |

| | |
|---|---|
| |  **ARC-Fire** https://activesafetydesigns.com/ar15/arc-fire-trigger-ambi-kit/ |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The ARC-Fire (Yellow/Blue) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange). **(Plaintiff-generated renderings of ARC-Fire here and below)** |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

COMPLAINT - 22 -

| | |
|---|---|
| rearward movement of a bolt carrier, | <br><br>**(Hammer Set Position)**<br><br><br><br>**(Hammer Released Position)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The ARC-Fire (Yellow/Blue) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (Brown) has a sear. |



| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions. |

**(Trigger Member Set Position Above)**

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |

| | |
|---|---|
| | **(Trigger Member Released Position)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).<br><br>**(Disconnector Hook Engaged)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The ARC-Fire (Yellow/Blue) has a lever (Yellow) with a cam lobe that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting ARC-Fire, shown in (Yellow/Blue), in fire control mechanism pocket) |

COMPLAINT - 25 -



**(ARC-Fire Lever with Cam Lobe)**

| | |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**(Cam and Lobe First Position)**<br><br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |



**(Cam and Lobe Second Position)**

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |
| | In the SEMI position, the ARC Lever will not engage the Cam as its rotated rearward leaving the Cam in the unlocked position. |
| said cam is in said first position, | the cam is in the first position. |

COMPLAINT - 27 -

| | |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.<br><br>Thereafter, the bolt carrier moves forward into battery, |

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, |  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br> |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |



In the active reset position the ARC Lever is pushed into the Cam allowing the Lever to interact with the Cam.

| | |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.<br><br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

| | |
|---|---|
| at which time the user can pull said trigger member to fire the firearm. |  at which time the user can pull the trigger member (Brown) to fire the firearm.  |

54. When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

55. Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively contribute to and actively induce infringement of the '247 Patent.

56. Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

57. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

58. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

59. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – DIRECT INFRINGEMENT OF THE '247 PATENT

60. The allegations set forth in paragraphs 1-59 are fully incorporated into this Third Count for Relief.

61. Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all

components of the claimed combination (the Infringing Device) to be used without authority within the United States.

62. In addition to making, using, selling and/or offering for sale the infringing Super Safety and ARC-Fire products, Defendants also modify, use, sell and/or offer to sell, for example, the "Geissele SSP Curved Trigger that has been pre-cut for Super Safety and ARC-Fire compatibility. Includes the lever blocker for use with Super Safety or ARC-Fire." See https://activesafetydesigns.com/ar15/geissele-ssp-curved-precut-trigger/ and https://activesafetydesigns.com/ar15/.



**Geissele**

**Geissele SSP Curved - Precut Trigger**

$245.00



AS Designs

**CPM-10V Super Safety Kit - DLC Black**

$149.99



AS Designs

**ARC-Fire Trigger - Ambi Kit**

$249.99

AS Designs

**Lever Blocker**

$9.99

COMPLAINT - 33 -

63. As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent under 35 U.S.C. § 271(a).

64. An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the charts in Paragraphs 43 and 52, above.

65. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

66. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

67. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '784 PATENT

68. The allegations set forth in paragraphs 1-67 are fully incorporated into this Fourth Count for Relief.

69. Defendants have and continue to directly infringe at least Claim 1 of the '784 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

70. An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent and the Defendants' Super Safety is illustrated in the chart below:

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a trigger member locking device.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12<br><br><br><br>**Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity) |

| | |
|---|---|
| | "The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which it locks the trigger member against pulling movement.  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | It is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |

COMPLAINT - 36 -

| | |
|---|---|
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br><br><br> |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br> |

| | |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.<br><br><br><br>Unlocked Second Position |
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver.<br><br> |
| and an upwardly extending deflectable portion that is separately | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of |

| movable relative to the body portion between an extended position | the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green). |
|---|---|
| |  |
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. |
| |  |
| | "The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the |

| | void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity). Super Safety Guide at 4. https://www.scribd.com/document/843484122/Super-Safety-Documentation |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br><br> |

71. The claim chart below illustrates how, in the ARC-Fire, an upwardly extending deflectable portion is separately movable relative to the body portion that locks the trigger.

| Claim 1: Language | Infringing Device (ARC-Fire) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |



**ARC-Fire**

https://activesafetydesigns.com/ar15/arc-fire-trigger-ambi-kit/

**ARC-Fire Installed**
(Plaintiff-generated renderings of ARC-Fire here and below)

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The ARC-Fire (Yellow/Blue) operates as a locking member and has a first position in which the ARC-Fire locks the trigger member against pulling movement.<br><br><br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The ARC-Fire (Yellow/Blue) is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |

COMPLAINT - 42 -

| the locking member configured to be movably supported by a frame | The ARC-Fire (Yellow/Blue) is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |
|---|---|
| |  **(section view of body portion for clarity)** |

| | |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The ARC-Fire (Yellow/Blue) has an upward extending portion (Yellow) configured to make actuating contact with a surface of the bolt carrier.<br><br> |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.<br><br><br><br>**Unlocked Second Position** |

| the locking member having a body portion that is movably supported | The ARC-Fire (Yellow/Blue) has a body portion (Blue) that is movably supported by the lower receiver using a detent (purple).  **(section view of body portion (Blue) for clarity)**  The body portion (Blue) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Purple) |
| --- | --- |

| | |
|---|---|
| |  Once installed, the body portion (Blue) is movably supported by the lower receiver (grey) using the detent (purple). **(section view of body portion (Blue), lower receiver (Grey), and detent (Purple) for clarity)** |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The ARC-Fire has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).<br><br> |

| | |
|---|---|
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.  |
| and a deflected position. | The lever is now shown deflected independent of the body. |

72. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Super Safety and ARC-Fire, along with the other components of the claimed combination are direct infringements of the '784 Patent.

73. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

74. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a. A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent;

b. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

COMPLAINT - 48 -

d.      A judgment and order requiring Defendants to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '247 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

e.      A judgment in favor of Plaintiffs that Defendants have infringed the '784 Patent;

f.      A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent, or other such equitable relief as the Court determines is warranted;

h.      A judgment and order requiring Defendants to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '784 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

i.      A finding that the infringement was willful, making this an exceptional case, and awarding treble damages and attorneys' fees to Plaintiffs; and

j.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: December 30, 2025

Respectfully submitted,

 /s Ross R. Fulton
Ross R. Fulton
N.C. State Bar No. 31538
Rayburn Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte, NC 28202
Tel: 704.334.0891
Fax: 704.377.1897
Email: rfulton@rcdlaw.net

and

Glenn D. Bellamy (special appearance forthcoming)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*